AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

for the

District of New Mexico

JUN 09 2021

In the Matter of the Search of
)
*(Briefly describe the property to be searched*
*or identify the person by name and address)*
)
)
Case No. 21-MR-784
)
Records of Cellular One phone number 505-567-8720
stored at premises owned, maintained, controlled, or
operated by Cellular One
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated by reference)

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1153 | Offenses Committed in Indian Country |
| 18 USC 1111(a) | Murder |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Justin Tennyson*
*Applicant's signature*

Justin Tennyson, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___ telephone and submitted via email ___ *(specify reliable electronic means).*

Date: June 9, 2021

*Judge's signature*

City and state:  Farmington, New Mexico

B. Paul Briones, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (505) 567-8720, THAT IS STORED AT PREMISES CONTROLLED BY CELLULAR ONE. | Case No. ___21-MR-784___ |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Justin Tennyson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular telephone assigned call number (505) 567-8720

("the SUBJECT PHONE"), that is stored at premises controlled by Cellular One, a wireless

telephone service provider headquartered at 1500 S. White Mountain Road #103, Show Low,

Arizona, 85901.  The information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. § 2703(c)(1)(A) to require Cellular One to disclose to the government copies of the

information further described in Section I of Attachment B.  Upon receipt of the information

described in Section I of Attachment B, government-authorized persons will review the

information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the FBI and have been since July of 2014.  Your

affiant is currently assigned to the Albuquerque Division of the FBI, Gallup Resident Agency,

and has primary investigative responsibility for crimes occurring within Indian Country,

including violent crimes such as homicide, robbery, arson, aggravated assault, sexual assault and

narcotics violations.  The information set forth in this affidavit has been derived from an

investigation conducted by your affiant and/or communicated to him by other sworn Law

Enforcement Officers. This affidavit is intended to show merely that there is sufficient probable

cause for the requested search warrant and does not set forth all of my knowledge about this

matter.

      3.      Based on the facts set forth in this affidavit, there is probable cause to believe that

violations of Title 18 U.S.C. §§ 1153 (Offenses Committed Within Indian Country) and 1111

(Murder) have been committed by Josiah SMITH, year of birth 1993.  There is also probable

cause to search the information described in Attachment A for evidence of these crimes as

further described in Attachment B.

## PROBABLE CAUSE

      4.      Your Affiant was contacted on May 17, 2021 by a Navajo Department of Criminal

Investigations Criminal Investigator (CI) regarding a deceased male, identified as D. D., year of

birth 1992, hereafter John Doe, who had received a gunshot wound to the back. The location of the

incident was at John Doe's residence, located in Church Rock, New Mexico. On May 17, 2021,

John Doe was pronounced deceased by the Office of the Medical Investigator (OMI). A search of

the exterior of the residence revealed (2) 9mm bullet casings near the open south bedroom window

and (1) 9mm bullet casing behind the residence. The south bedroom had a television that had a

bullet hole through it and John Doe had a single wound below the left scapula.

      5.      On May 17, 2021, D.P., year of birth 1962, hereafter Witness 1, was interviewed

by law enforcement. Witness 1 stated she had been staying at John Doe's residence with her

daughter, S.P., year of birth 1991, hereafter Witness 2, and had been there for several weeks. Earlier

in the day, SMITH and an unidentified male came to the residence. SMITH, the unidentified male,

and J.Y., year of birth 1973, hereafter Witness 3, went out the back door of the residence with a gun. Witness 1 heard (1) gun shot.

6.     Witness 1 heard SMITH tell John Doe that he was, "going to get you next time." Witness 1 told SMITH to leave it alone and to leave. Witness 1 also told John Doe to leave SMITH alone and not to bother him.

7.     SMITH walked away and Witness 1 then went into the restroom and heard (2) gunshots. Witness 1 ran out of the restroom and went into the south bedroom. Witness 1 saw SMITH standing outside the bedroom window pointing a gun into the bedroom. Witness 1 jumped on the bed and stood in front of SMITH while he was pointing the gun into the bedroom. Witness 1 told SMITH to leave and SMITH then stated, "No, No, No," and left in a hurry. Witness 1 described the gun as a small gray hand gun with a long barrel.

8.     Witness 1 turned around and saw John Doe laying on the floor.

9.     On May 17, 2021, Witness 2 was interviewed by law enforcement. Witness 2 stated that she had been in a relationship with John Doe and had been staying at the residence for the past (2) years. Witness 2 had been drinking alcohol earlier in the day with others and SMITH had showed up with Gilbert Last Name Unknown (LNU) to her residence. Witness 2 was later shown a picture of Gilbert David JOHN, Jr., year of birth 1988, and Witness 2 confirmed that was the same individual.

10.     SMITH was looking for Witness 3 and D.H, year of birth 1967. SMITH, Witness 3, and D.H. are involved in methamphetamine. SMITH was told that D.H. wasn't there and that Witness 3 had left out of nowhere. Witness 2 was in the living room and heard (2) gunshots. Witness 2 went to her bedroom, which is the south bedroom, and saw Witness 1 standing there. Witness 1 said, "babe" and Witness 2 saw John Doe laying on the floor in front of the television. Witness 2

tried to resuscitate John Doe but he didn't make it. Witness 1 pulled Witness 2 away from John Doe and told her that he was gone.

11.     Witness 2 stated that Witness 1 told her that Witness 3 had told SMITH that John Doe had beat up her boyfriend, J.J, year of birth 1987, yesterday. J.J. and John Doe and gotten into a fight because Witness 3 tried to "mess around" with John Doe. J.J. and SMITH were friends and Witness 2 thought that was why SMITH might have shot John Doe.

12.     Witness 2 had grown up with SMITH and had dated him several years ago. Witness 2 has known SMITH to sell methamphetamine. Witness 2 has observed SMITH with a gun in the past but had not seen it on May 17, 2021.

13.     On May 17, 2021, Witness 3 was interviewed by law enforcement. Witness 3 stated that she has been living at the residence with her boyfriend, J.J. At about 3:00 p.m., "Jojo" and an unidentified male came to the residence. Witness 3 did not know Jojo's real name. They smoked methamphetamine with Jojo and the unidentified male. They were also drinking alcohol. Jojo had a "long gun" and they went outside to shoot it. Witness 3 had never shot a gun before and had asked to shoot it. Witness 3 shot the gun once and they went back inside the residence. Jojo asked where J.J. was and Witness 3 told him that he had called the ambulance for himself and was transported to the hospital.

14.     Witness 3 stated that Witness 2 had got mad at her and tried to fight her. Witness 3 then left the residence and walked down the road. When Witness 3 returned to the residence, she was informed that John Doe was dead.

15.     On May 17, 2021, J.J. was interviewed by law enforcement. J.J. stated he is the boyfriend of Witness 3. J.J. woke up that morning and his head was all bloody and he was in pain.

J.J. called an ambulance and he was transported to the Gallup Indian Medical Center (GIMC) emergency room. When J.J. returned to the residence, John Doe had been killed.

16.     J.J. stated that he had gotten into a fight with John Doe. This was the first time that they had ever fought. J.J. didn't know what had caused the fight as J.J. was really drunk at the time. J.J. stated he knows "Jojo" as he will come out there and deal drugs. Jojo usually brings guns out to the residence and he tries to sell them to J.J. J.J. had recently seen Jojo with a rifle and a handgun.

17.     On June 03, 2021, D.H. was interviewed by law enforcement. D.H. stated that he was not around when John Doe was killed. D.H. was told by Witness 2 that "Josiah" had shot John Doe. D.H. was told that SMITH was looking for him that day as they sometimes would hang out.

18.     D.H. stated that SMITH's father and brother had recently been out to the residence as they were looking for SMITH. They wanted SMITH to turn himself in to authorities. SMITH's mother was really worried about him. SMITH's father didn't want him to run from the police because if SMITH had guns he may end up getting shot too. D.H. didn't believe that SMITH's family had found him yet. SMITH always told D.H. that he was buying guns and had guns but D.H. never saw him with any. SMITH's father told D.H. that SMITH had bought a gun not too long ago.

19.     On June 03, 2021, your Affiant went to the pawn shop located in the T & R Market, located at 667 Highway 491, Gallup, New Mexico, and spoke with the manager and owner. They provided your Affiant with a copy of the paperwork showing where SMITH had purchased a Diamondback Firearms DB9R 9mm rifle, serial number DB9M04631 on April 07, 2021. On the Firearms Transaction Record document, the employee had failed to get SMITH's signature but did receive SMITH's signature on the T & R Pawn New Firearm Owners - Manual Delivery Certification form. The owner stated that SMITH did purchase the firearm and received it. The owner attempted to retrieve video footage of the transaction but it was no longer stored.

20.     Law enforcement has made attempts to locate SMITH to interview him but have

not been successful.

21.     During the course of the investigation, the FBI obtained SMITH's phone

number, (505) 567-8720, the Subject Phone, and confirmed the service provider was Cellular One

of Northeast Arizona.  On May 27, 2021, a Grand Jury subpoena was served to Cellular One of

Northeast Arizona for the Subject Phone. On June 07, 2021, the results of the subpoena revealed

the subscriber was SMITH and that the account was created on December 23, 2019. The account

status was listed as active.

22.     Based on my training and experience, in this current technological era, people carry

their cell phones with them wherever they travel.   As a result, these electronic devices often create

evidence of criminal activity.  Relevant here, information stored by the wireless provider can help

indicate the geographic location of the cellular device and user at a particular time.

23.     In my training and experience, I have learned that Cellular One is a company that

provides cellular telephone access to the general public.  I also know that providers of cellular

telephone service have technical capabilities that allow them to collect and generate information

about the locations of the cellular telephones to which they provide service, including cell-site

data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received

a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the

towers) to which the telephone connected.  These towers are often a half-mile or more apart,

even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower

closest to a wireless device does not necessarily serve every call made to or from that device.

Accordingly, cell-site data provides an approximate location of the cellular telephone but is

typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

24.    Based on my training and experience, I know that Cellular One can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as Cellular One typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

25.    Based on my training and experience, I know that wireless providers such as Cellular One typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as Cellular One typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## JURISDICTIONAL STATEMENT

26.    The location of where John Doe was murdered is within the boundaries of the Navajo Indian Reservation, which is Indian Country in the District of New Mexico.

## AUTHORIZATION REQUEST

27.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

28.    I further request that the Court direct Cellular One to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Cellular One, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Justin Tennyson*
Justin Tennyson
Special Agent
FBI

Telephonically sworn and electronically signed before me this 9th day of June 2021

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (505) 567-8720, "the Subject Phone", that are stored at premises controlled by Cellular One ("the Provider"), headquartered at 1500 S. White Mountain Road #103, Show Low, Arizona, 85901.

## ATTACHMENT B

## Particular Things to be Seized

### I.   Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period May 14, 2021 through June 9, 2021.:

> a.  The following information about the customers or subscribers of the Account:
>
>> i.  Names (including subscriber names, usernames, and screen names);
>>
>> ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
>>
>> iii.  Local and long-distance telephone connection records;
>>
>> iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
>>
>> v.  Length of service (including start date) and types of service utilized;
>>
>> vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
>>
>> vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. §§ 1153 (Offenses Committed in Indian Country) and 1111 (Murder) involving Josiah SMITH during the period May 14, 2021 through June 9, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Cellular One, and my title is

_____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Cellular One.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Cellular One, and they were made by Cellular One as a regular practice; and

b.      such records were generated by Cellular One's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Cellular One in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Cellular One, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____
Date

_____
Signature